IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 10, 2016

**STATE OF TENNESSEE v. SHIEMA MONIQUEKE REID**

**Appeal from the Criminal Court for Davidson County**
**No. 2014-A-546      Steve R. Dozier, Judge**

_____

**No. M2015-00434-CCA-R3-CD – Filed September 21, 2016**

_____

A Davidson County Criminal Court Jury convicted the appellant, Shiema Moniqueke Reid, of perjury, a Class A misdemeanor, and the trial court sentenced her to eleven months, twenty-nine days to be served on supervised probation. On appeal, the appellant contends that the evidence is insufficient to support the conviction. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Richard C. Strong, Nashville, Tennessee, for the appellant, Shiema Moniqueke Reid.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Glenn R. Funk, District Attorney General; and Nathan McGregor, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On August 23, 2012, the appellant was working as a waitress at the Hard Times Bar and Grill on Dickerson Road in Nashville when a customer, Phillip Morton, shot and killed another customer, Keith Gaston. On September 6, 2012, the appellant testified at Morton's preliminary hearing. In January 2014, the Davidson County Grand Jury indicted the appellant for aggravated perjury based upon her giving false testimony during the hearing. Specifically, the indictment alleged that the appellant

did intentionally make a false statement under oath, to wit: **that, on August 23, 2012, at the time that Keith Gaston was shot and killed . . . she was very close to both Keith Gaston and Phillip Morton in that Phillip Morton had to move to let her pass by to get to the bar** . . . .

At the appellant's trial, Bret Gunn, an assistant district attorney general for Putnam County, testified that he was a prosecutor in Davidson County at the time of Gaston's death and in charge of the State's first degree murder case against Morton, including Morton's preliminary hearing. Nine surveillance cameras were recording in different areas of the Hard Times Bar and Grill at the time of the shooting, but General Gunn did not watch the video of the shooting prior to the preliminary hearing. Three witnesses, one of whom was the appellant, testified at the hearing. General Gunn said that he had a "hurried first meeting" with the appellant before the hearing began and that he had a summary of what she had told the police,

> which was that she had been near both the victim and the defendant at the time of the shooting; that she had been up at the bar picking up a drink order and gotten very close to the defendant; had turned and walked away for a brief time, like a couple seconds, and then she heard the shot.

The statements the appellant made to General Gunn before Morton's preliminary hearing were consistent with what she had told the police.

General Gunn testified that Gaston was shot in the head and received a contact wound, "meaning the gun was pressed up against his head." Therefore, "the only people that could have done it were people that were within the distance to have touched him. So it was critical as to when that shot was fired who could have been within that range." General Gunn called the appellant to testify at the hearing to establish that Morton was the only person close enough to Gaston "to have done that."

General Gunn testified that after Morton's preliminary hearing, he watched the video recording of the shooting. At that time, he was concerned about Morton's movements and did not pay attention to the appellant in the video. Later, in preparation for Morton's trial, General Gunn met with the appellant in her home "so she could show [him] where she was on the video." General Gunn played the video for the appellant on a laptop computer. He did not see her in the video and tried to get her to explain to him where she was located.

General Gunn testified the he replayed the video for the appellant and that she identified herself in the video a few minutes before the shooting. The video showed the appellant leaving the bar area where Morton and Gaston were located and going into a room with pool tables. The appellant did not reappear in the bar area until several minutes later, after the shooting. The video then showed her going to Gaston, who was lying on the dance floor, and staying with him until the police arrived. The only way to get to the dance floor from the pool tables was through the bar area.

General Gunn testified that the appellant's preliminary hearing testimony did not match the video and that the appellant was "clearly not where she said she was" at the time of the shooting. He stated that when he confronted her about the inconsistency, she "balled up" her subpoena for Morton's trial, threw it down, and said she was not coming to court. General Gunn told her the subpoena required her to appear in court. The appellant never offered any explanation for why the video did not corroborate her preliminary hearing testimony, never said she had made a mistake, and "just seemed mad." General Gunn stated that the situation with her "just kind of deteriorated" and that he left her home. The appellant had given "pretty damning" testimony against Morton at Morton's preliminary hearing, and the grand jury indicted Morton for first degree murder. However, General Gunn did not call the appellant to testify at Morton's trial "because she clearly lied" at the hearing.

The State played an audio-recording of the appellant's testimony at Morton's preliminary hearing for the jury. During the hearing, the appellant testified that she had never met Gaston before the shooting but that Morton was a regular customer at the Hard Times Bar and Grill. General Gunn asked her, "Just prior to the shooting, were you positioned close to where the victim was seated?" The appellant answered, "Yes sir, I was getting an order [at the bar]." The appellant acknowledged that while she was at the bar, both Morton and Gaston were on one side of her and were close to each other. The appellant said that after she filled her drink orders at the bar, she asked Morton to "let [her] by" and began walking away from the bar in order to deliver the drinks. About four seconds later, she heard a "pop" and saw that Gaston had fallen out of his chair and onto the dance floor.

The State also played the video recording for the jury, which showed different areas of the Hard Times Bar and Grill on August 23, 2012. The video showed that in the minutes before the shooting, Gaston was sitting at a table at one end of the bar, near the dance floor, and that the appellant was filling drink orders at the other end of the bar. At 35 minutes, 28 seconds on the video, the appellant left the bar and went into the pool table room. The shooting occurred at 38 minutes, 40 seconds. The appellant reentered the bar area from the pool table room at 39 minutes, 29 seconds and walked through the

bar area toward the dance floor. She reached Gaston, who was lying on the floor, at 39 minutes, 39 seconds.

On cross-examination, General Gunn testified that while he was playing the video for the appellant, she "kept affirming that she was at that corner of the bar where she said she was just prior to the shooting." General Gunn asked the appellant if she was positioned close to the victim "[j]ust prior" to the shooting but did not define "just prior" for her. He acknowledged that the video showed the appellant at the bar near Gaston and Morton at 33 minutes, 29 seconds. However, the shooting occurred more than five minutes later and after the appellant had left the bar area and gone into the pool table room. General Gunn said that based upon the appellant's preliminary hearing testimony, he had "expected to see her up to the corner of the bar moments before the shooting." Defense counsel asked, "And five minutes doesn't encompass moments?" General Gunn answered, "Not to me, no." He said that he did not threaten to charge the appellant with aggravated perjury while he was at her home but that he told her she had a subpoena for Morton's trial and, therefore, could be arrested if she did not come to court.

At the conclusion of General Gunn's testimony, the jury convicted the appellant of perjury, a Class A misdemeanor, as a lesser-included offense of aggravated perjury. The trial court sentenced her to eleven months, twenty-nine days to be served on supervised probation.

## II. Analysis

The appellant claims that the evidence is insufficient to support the conviction. First, she contends that the evidence fails to show that her "misstatements were intended to deceive." She also contends that General Gunn's question about where she was "just prior" to the shooting was insufficiently specific to allow a conviction for perjury because her subjective interpretation of the phrase differed from his; thus, the evidence fails to show that she gave a false statement. The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of

fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury convicted the appellant of perjury, which occurs when a person, with intent to deceive, makes a false statement under oath. Tenn. Code Ann. § 39-16-702(a)(1).[1]

The appellant testified that she went to the bar before the shooting to fill drink orders and that Morton and Gaston were on one side of her and near each other. She then stated that after she obtained the drink orders, she turned to leave the bar in order to deliver the drinks. About four seconds later, she heard a gunshot. However, the video shows that the appellant left the bar area several minutes before the shooting, that she was in the pool table room when Gaston was killed, and that she was nowhere near Gaston and Morton at the time of the shooting.

Regarding the appellant's claim that the State failed to show she intended to deceive, General Gunn testified that the appellant never offered an explanation for the discrepancies between her testimony and the video, never claimed that she had made a mistake, and "just got mad" when he confronted her. The State argued during closing arguments that the appellant's testimony was "not even close" to what was depicted in the video and was too different from the video for her testimony to have been an "honest mistake." The jury resolved this issue against the appellant, and we shall not reweigh the evidence.

---

[1] We note that the appellant was charged with aggravated perjury, which occurs when a person commits perjury, the false statement is committed in connection with an official proceeding, and the false statement is material. Tenn. Code Ann. § 39-16-703(a)(1)-(3).

As to the appellant's claim that General Gunn's question about where she was "just prior" to the shooting was insufficiently specific to allow a conviction, the appellant cites State v. Forbes, 918 S.W.2d 431, 444 (Tenn. Crim. App. 1995), in which this court held that "a 'half-truth' is not legally sufficient evidence to support a conviction for making a false representation of fact." However, we see nothing in the appellant's preliminary hearing testimony that could be consider a "half-truth." The appellant stated that she was in the bar area with Morton and Gaston at the time of the shooting and that she heard the gunshot within seconds of leaving the bar to deliver drinks. The video, though, shows that the appellant left the bar area several minutes before the shooting, that she was in the pool room at the time of the shooting, and that she could not have heard the gunshot within seconds of leaving the bar. In other words, the appellant's statements were completely false. Thus, we conclude that the evidence is sufficient to support the conviction.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE

- 6 -